UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| MARY S. TAYLOR, ET AL. | CIVIL ACTION |
| VERSUS | NO. 07-3116 |
| BISSO TOWBOAT COMPANY, INC. ET AL. | SECTION "L" (3) |

## FINDINGS OF FACT & CONCLUSIONS OF LAW

### PROCEDURAL HISTORY

This is a maritime slip and fall case. On June 15, 2005, the Plaintiff, Edmund Taylor, alleges that he slipped on soapy water on the deck of the M/V JANE S, and fell down a set of stairs resulting in an injury to his leg for which he has had several surgeries. On June 4, 2007, Plaintiff filed suit in the Eastern District of Louisiana asserting claims under the Jones Act and General Maritime Law against his employer, Bisso Towboat Company ("Bisso"). In his complaint, Plaintiff asserts that his injury was caused by the negligence of the Defendant. Alternatively, he asserts that the vessel was unseaworthy. Plaintiff claims that he is entitled to damages for pain and suffering, mental anguish, and loss of income, past, present and future. Finally, Plaintiff claims that Defendant has failed to satisfy its Maintenance and Cure obligation.

Defendant denies liability and claims that the injury was caused solely by the negligence of the Plaintiff. Further, Defendant claims that the vessel was seaworthy. Additionally, it claims that Plaintiff is capable of returning to work and has failed to mitigate his damages. Finally, Defendant claims that the maintenance and cure obligation has been fully satisfied.

This matter came on for trial without a jury on August 19, 2009. The Court has carefully considered the testimony of all of the witnesses and the exhibits entered into evidence during the

trial, as well as the record. Pursuant to Rule 52 (a) of the Federal Rules of Civil Procedure, the Court issues the following Findings of Fact and Conclusions of Law. To the extent that any finding of fact may be construed as a conclusion of law, the Court hereby adopts it as such and to the extent that any conclusion of law constitutes a finding of fact, the Court adopts it as such.

**FINDINGS OF FACT**

1.

Defendant, Bisso Towboat Co. Inc ("Bisso") is a privately owned Louisiana Corporation with its principal place of business in New Orleans, Louisiana. Bisso operates inland towing vessels, or assist/harbor tugs, which escort, dock and undock ships from various berths on the Mississippi River. Bisso exclusively operated and controlled the M/V Jane S, a twin-screw 3600 horsepower tugboat.

2.

Plaintiff, Edmund Taylor ("Taylor"), was employed by Bisso in 1989 as an engineer on Bisso's inland tugboats. Sometime around the year 2000 Taylor was assigned to the M/V Jane S as Chief Engineer and since that time has worked steadily in that capacity. His tour of duty on the M/V Jane S was 7 days on and 7 days off. In addition to Taylor the M/V Jane S had two other crew members: the Captain, Robert Liebkemann, and the Deckhand, Brian Tastet.

3.

On the morning of June 15, 2006 the M/V Jane S was on stand-by awaiting orders for the next job. The vessel was tied up at the Poland Avenue Wharf on the Mississippi River in New Orleans.

4.

Sometime around 0800 that morning, Taylor proceeded to the engine room to fire up the engines in anticipation of moving the vessel. As he approached the top landing of an internal flight of stairs leading from the top of the engine room to the bottom, he claims that his foot slipped on a substance that had apparently leaked from a nearby washer/dryer causing him to fall down the flight of stairs and sustain injuries. The parties do not dispute that Taylor was injured as a result of his fall. The parties, however, do dispute the cause of his fall and the nature and extent of his injuries.

5.

Taylor claims that his fall was caused by the negligence of his employer and the unseaworthiness of the M/V Jane S. Specifically, Taylor claims that he slipped on a substance which leaked out of the washer/dryer located at the top of the stairs, a condition which was known or should have been known by Bisso who allegedly failed to correct or remedy the condition.

6.

Bisso claims that the fall was due to Taylor's negligence in wearing improper shoes which caused him to trip and fall. Furthermore, Bisso claims that as Chief Engineer it was Taylor's job to make the engine room safe and remove and remedy any potential hazards. The company's safety policies and procedures which were given to all employees provide in pertinent part the following: "[a]t no time when the vessel is operating will thongs, flip-flops, sandals or tennis shoes be worn on deck or in the engine room." At the time of his fall Taylor

was wearing sandals in violation of this rule.

7.

At approximately 0830 Captain Liebkemann left the wheelhouse and went into the galley to tell Taylor to crank up the engines for the next job. He proceeded through the galley door and into the upper engine room where he observed Taylor lying on the lower engine room floor at the bottom of the staircase which leads from the upper engine room to the lower engine room. This interior staircase consists of permanent diamond tread steps with non-skid tape on each step and two handrails. The upper engine room has a slight crown in the middle of the deck. This area is well-illuminated and Taylor regularly transited these stairs thousands of times without incident during his years aboard the M/V Jane S. In fact several times that morning Taylor had walked in the near vicinity of these stairs.

8.

Captain Liebkemann went down the stairs to where Taylor was lying to ascertain what had happened and whether Taylor was injured. According to the Captain, Taylor said he had tripped and did not mention anything about slipping on a substance at the top of the stairs. The Captain testified that he went back up the stairs at least twice thereafter in an effort to make Taylor comfortable while he sought medical help. During these times he did not see anything either on the stairs or at the top of the stairs. The Captain then proceeded to wake up the deck-hand, Brian Tastet, and told him that Taylor was injured and that he should go stay with Taylor while he arranged to get Taylor to the hospital. Tastet walked down the stairs to where Taylor was lying and stayed with him for about 30 minutes until the EMS medics arrived. Tastet testified that he did not see any substance either on the stairs or at the top of the stairs.

Furthermore, Taylor did not tell Tastet that he had slipped on anything.

9.

Taylor was transported from the M/V Jane S by EMS personnel and brought to the nearest hospital, West Jefferson Hospital. Taylor's left leg was injured. His injuries were diagnosed as a fractured left distal fibula and proximal fibula. He also had a torn medial meniscus of the left knee. Taylor received extensive medical treatment including several surgical procedures consisting of the realignment of the bones in his left leg and the stabilization of them with a metal rod. He returned to work sometime in September or October of 2006 but left in January of 2007 complaining of pain. He has not returned to any work since that time but is able to do some household chores and engage in several hobbies or social activities such as motorcycle riding. Taylor's date of birth is November 2, 1943. At the time of trial he was 65 years old. He has a high school equivalent education. His work history and experience has been aboard vessels.

10.

From the date of the incident, June 15, 2006 through September 15, 2007, Bisso paid full salary to Taylor in the amount of $40,895.50. This includes the days that he returned to work for Bisso between October 31, 2006 and January 29, 2006. From September 16, 2007 through the present, Bisso has paid maintenance benefits of $20.00 per day in the total amount of $13,740 and medical expenses of $71,561.80.

**CONCLUSIONS OF LAW**

1.

This Court has jurisdiction over this matter pursuant to 28 U.S.C §133 which provides original jurisdiction over admiralty or maritime claims, the Jones Act , General Maritime Law and Rule 9(h) of the Federal rules of Civil Procedure. Venue is proper because the defendant is subject to the personal jurisdiction of this Court.

2.

The matters before this Court include determination of the cause of Taylor's injuries, whether Bisso was negligent under the Jones Act, whether the M/V Jane S was unseaworthy under the General Maritime Law and whether Taylor is entitled to any maintenance and cure benefits above and beyond what he has already received. To put these various claims in proper focus a brief summary of the applicable substantive law is helpful.

3.

A seaman is entitled to recover under the Jones Act if his employer's negligence is the cause, in whole or in part, of his injury. *See Becker v. Tidewater*, 335 F.3d 376, 386 (5th Cir. 2003) . A seaman's employer is legally responsible for the negligence of one of its' employees while that employee is acting within the course and scope of his employment. An employer has a duty to provide its' seaman employees with a reasonably safe place to work. *Kendrick v. Maersk Line, Ltd.*, No. 04-1147, 2006 WL 1236057, at *3 (E.D. La. May 3, 2006). The duty of a Jones Act employer to provide a safe place to work, however, is not an absolute duty and the employer is not required to provide an accident proof workplace. *See id.* The mere fact that an accident occurs or that an injury is sustained does not prove negligence under the Jones Act. *See*

*id.*

4.

Also under the Jones Act a seaman, such as Taylor, is obligated to act with ordinary prudence under the circumstances. *Gautreaux v. Scurlock Marine, Inc.*, 107 F.3d 331, 339 (5th Cir. 1997) The circumstances of a seaman's employment include not only his reliance on his employer to provide a safe work environment, but also his own experience, training and education. In short a seaman has the duty to exercise that degree of care for his own safety that a reasonable seaman would exercise in the same or like circumstances. *Id.*

5.

A shipowner such as Bisso also has a duty to provide a seaworthy vessel. *Garcia v. Murphy Pac. Marine Salvaging Co.*, 476 F.2d 303, 305 (5th Cir. 1973). A seaworthy vessel is one that is reasonably fit for its intended use. *Id.* The duty to provide a seaworthy vessel is absolute because the vessel owner may not delegate that duty to anyone. The liability of a vessel owner for an unseaworthy condition does not in any way depend upon negligence or fault or blame. If a vessel owner does not provide a seaworthy vessel, no amount of care or prudence excuses the owner. However, the vessel owner is not required to furnish an accident free vessel. The vessel owner need only furnish a vessel and appurtenances that are reasonably fit for their intended use and a crew that is reasonably adequate for their assigned tasks. *Id.*

6.

Finally, in addition to the above tort based claims, a seaman injured in the course of his or her employment has a claim for maintenance and cure. *Bertram v. Freeport McMoran, Inc.*, 35 F.3d 1008, 1013 (5th Cir. 1994) The right to maintenance and cure is a quasi contract based

right. *Id.* It is a fundamental component of the relationship between a seaman employee and his employer. It is not dependent on either employer negligence or vessel unseaworthiness. *Id.* It is also independent of any other source of recovery. *Id.* Maintenance is the seaman's right to food and lodging, and Cure is the seaman's right to necessary and appropriate medical services. Both rights extend to the point at which the seaman reaches maximum medical improvement ("MMI"). Therefore, the maintenance and cure duty does not extend to treatment which is only palliative in nature and "result[s] in no betterment in the claimant's condition." *Rashidi v. Am. President Lines*, 96 F.3d 124, 128 (5th Cir. 1996). With these legal principles in mind it is timely to turn to the evidence.

7.

The credible evidence in this case supports the conclusion that Taylor tripped and fell down the interior stairs in the engine room while in the course of his employment. The sole cause of Taylor's fall and resulting injuries was his own negligence in wearing improper shoes in direct violation of Bisso's safety rules. These shoes caused him to trip and fall down the stairs. Several other crew members and EMS personnel traversed these same stairs and there is no evidence that anyone saw any substance on the adjacent deck or stairs. There is no evidence that someone cleaned up any spillage. The credible evidence reveals that Taylor never told anyone who came to his aid shortly after his fall that he slipped on any substance or warned them of the presence of any substance. There is no evidence supporting Taylor's claims of a spill on the deck or his slipping. In fact the testimony of all of the witnesses, the incident or accident report which was made out immediately after the fall, and the lack of any entries in the log book mentioning either a repair or complaint of a leak all point to the absence of any material on the

stairs or adjacent deck. Taylor simply fails to carry his burden of proving that his fall and resulting injuries were caused by either the negligence of his employer or the unseaworthiness of the vessel.

8.

Accordingly, Taylor is not entitled to recover monetary damages under the Jones Act for employer negligence or for vessel unseaworthiness under the General Maritime Law. He is, however, entitled to recover maintenance and cure benefits until he reaches MMI. However, the record reflects that he has received these benefits with the exception of some co-payments which he made during his hospitalization in January of 2007 such as $30.00 for a specialist and $150.00 for the hospital. The undisputed testimony is that Taylor reached MMI on September 5, 2008. Dr. Matti Palo testified as follows:

> Q. Do you believe as of September 5, 2008 Mr Taylor
>    was at Maximum Medical Improvement as far as
>    you are concerned?
>
> A. Yes

Dr. Thomas Cashio also testified:

> Q. Doctor, if I asked you to assume that after you finished seeing,
>    so to speak, Mr. Taylor in September of '07 he continued to
>    treat with Dr. Palo in Covington, until Dr. Palo released him,
>    as reaching maximum medical cure in September of '08, you
>    wouldn't have any reason, as we sit here today, to dispute
>    Dr. Palo's opinions, would you?

A. No.

There is some testimony that Taylor may need additional surgery in the future although no one can say that with a reasonable degree of medical certainty. If indeed he does undergo such surgery he may be entitled to maintenance and cure benefits at that time, if the surgery is related to his injuries. However, that issue is not presently before the Court.

**SUMMARY AND CONCLUSION**

On the basis of the above Findings of Facts and Conclusions of Law, the Court finds that although the Plaintiff was injured in the course and scope of his employment his injuries were due to his own negligence and were not caused by employer negligence or vessel unseaworthiness. Accordingly, his negligence claims under the Jones Act and unseaworthiness claim under the General Maritime Law are DISMISSED WITH PREJUDICE. Taylor is, however, entitled to outstanding maintenance and cure benefits of $180 (which are the co-payments for which he has not received reimbursement) plus prejudgment interest on these payments from their due date until paid.

New Orleans, Louisiana, this 24th day of August, 2009.

_____
UNITED STATES DISTRICT JUDGE